**Marie CEGLIA, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of the United States Department of Health and Human Services, Defendant.**

**No. 81 Civ. 1440.**

United States District Court,
E.D. New York.

May 24, 1983.

**120**

Jane C. Reinhardt, Nassau/Suffolk Law Services Committee, Bay Shore, N.Y., for plaintiff.

Winstanley F. Luke, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

On January 28, 1983, this Court remanded for reconsideration a determination of the Secretary of Health and Human Services (the "Secretary") denying plaintiff's application for widow's disability benefits. Plaintiff now petitions this Court for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C.

§ 2412(d).[1] For the reasons that follow, the application of the plaintiff is granted.

*Facts*

The plaintiff applied for Disabled Widows Social Security Insurance benefits on October 18, 1979 (T 60–65). After her application was denied, the plaintiff filed for a reconsideration of the claim and it was again denied. (T 67–68, 70–73, 74–75). The plaintiff then requested an administrative hearing, which was held before an Administrative Law Judge ("ALJ") on July 18, 1980.

The record before the ALJ contained medical evaluations favorable to the plaintiff's claim by the plaintiff's treating physician and a physician who examined her as a consultant to the Social Security Administration. The record also contained a medical evaluation unfavorable to the plaintiff's claim by a Dr. David Abramson, who did not examine plaintiff but merely reviewed her social security file as a consultant to the Social Security Administration.

The ALJ, in a decision rendered on October 17, 1980, affirmed the denial of the plaintiff's application for widow's benefits. (T 12–16) The ALJ based his denial of benefits substantially on the conclusions of Dr. Abramson. (T 15)

The plaintiff then requested a review of the ALJ's decision by the Appeals Council of the Social Security Administration. Plaintiff's counsel submitted a letter to the Appeals Council which argued that the decision of the ALJ should be reversed because the evidence established that plaintiff was disabled. Plaintiff argued in the alternative that the matter should be remanded for a new hearing because the ALJ's decision, in resting primarily on the evaluation of a

---

1. It is not entirely clear from the plaintiff's papers whether the motion here is brought in the name of the plaintiff, or in the name of plaintiff's counsel, the Nassau/Suffolk Law Services Committee, Inc. This is troublesome in light of the Second Circuit's holding in *Oguachuba v. INS.*, 706 F.2d 93, 97–98 (2d Cir.1983), that an application for fees under the EAJA must be made in the name of the plaintiff. Where, as here, the plaintiff is represented by a legal services organization, any fee obtained will go directly to the legal services organization which is in reality the real party in interest. It would therefore be exalting form over substance to deny this motion so that the ministerial function of substituting the plaintiff for the legal services organization could be accomplished. For this reason I find that the case is distinguishable from *Oguachuba* which involved private counsel, and I therefore find that the motion is proper.

non-treating, non-examining physician, was not supported by substantial evidence. The Appeals Council denied the plaintiff's request for review on March 2, 1981, thereby rendering the ALJ's decision the final decision of the defendant in this case. (T 4–5)

The plaintiff commenced this action on May 4, 1981, and was permitted to prosecute this appeal in *forma pauperis*. In her complaint the plaintiff argued that this Court should reverse the defendant's decision because the record established disability. In the alternative, the plaintiff argued that the ALJ failed to properly weigh the evaluations of the physicians involved in this case and that, therefore, the matter should be remanded for a new hearing.

On July 27, 1982, the plaintiff moved for summary judgment in her favor. On August 26, 1982, the defendant cross-moved for judgment on the pleadings in its favor.

In a memorandum and order dated January 28, 1983, I denied the defendant's motion and granted the plaintiff's motion to the extent of remanding the plaintiff's claim to the defendant Secretary for a new hearing. In reaching this determination, I held that Dr. Abramson's medical opinion, contrary as it was to the opinions of the examining physicians, could not constitute substantial evidence supporting a finding of nondisability. The matter was remanded for a new hearing wherein the reports of the examining physicians were to be properly weighed.

That order was entered by the Clerk of the Court on February 1, 1983. This motion for counsel fees under the EAJA was made within thirty days of that order.

*Discussion*

The EAJA provides, in relevant part, that a Court:

"shall award to a prevailing party ... fees and expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the Court finds that the position of the United States was substantially justified

or that special circumstances make an award unjust."

28 U.S.C. § 2412(d)(1)(A).

Defendant opposes the plaintiff's application for fees on the grounds that (1) plaintiff was not a "prevailing party" within the meaning of the EAJA; (2) plaintiff has not "incurred" any fees or expenses within the meaning of the EAJA; (3) the position of the United States was "substantially justified," and (4) plaintiff's fee request is inflated. These arguments will be treated seriatim.

■ (1) Defendant argues that because the plaintiff's claim for benefits was merely remanded to the Secretary by this Court, the plaintiff is not a "prevailing party" under the Act. Plaintiff argues that the remand order was a sufficiently dispositive ruling to justify an award of fees.

While the EAJA requires that the plaintiff be a "prevailing party," this term is not defined in the Act. The House Report, however, notes that "[a] fee award may ... be appropriate where the party has prevailed on an interim order which was central to the case." H.R. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4990 (*citing Parker v. Matthews,* 411 F.Supp. 1059, 1064 (D.D.C. 1976)). I find that the order of remand here, while not a final appealable order,[2] was sufficiently central to the case to justify an award of fees.

The gravamen of the plaintiff's complaint was that the decision of the Secretary was not supported by substantial evidence because it improperly relied on the report of a non-examining doctor. The plaintiff sought outright reversal, and remand in the alternative.

Although the plaintiff did not obtain the relief of reversal and consequent granting of benefits, the plaintiff's contention that the decision of the Secretary did not rest on substantial evidence was clearly vindicated by my order of remand. It is significant to observe in this regard that the plaintiff's

---

2. *See Gilcrist v. Schweiker,* 645 F.2d 818 (9th Cir.1981); *Dalto v. Richardson,* 434 F.2d 1018

(2d Cir.1970), *cert. denied,* 401 U.S. 979, 91 S.Ct. 1211, 28 L.Ed.2d 330 (1971).

claim was not remanded to the Secretary simply for a clarification of the agency's decision, or for the taking of additional evidence. Rather, the case was remanded to the Secretary for a *de novo* determination of the plaintiff's eligibility for benefits "giving proper weight to the reports of the treating and consultative physicians." *Ceglia v. Schweiker,* 81 Civ. 1440 (E.D.N.Y. January 28, 1983) (Memorandum and Order at p. 5). Because the plaintiff's legal theory was substantially adopted by the Court, and because significant alternative relief requested in the complaint was granted, I find that the remand order was central to the case, and that the plaintiff was therefore a "prevailing party" within the meaning of the EAJA.

In this regard, the case is not unlike *Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D. N.Y.1982), wherein Judge Weinfeld granted fees to a plaintiff after the government consented to remand the case to the Secretary. Judge Weinfeld stated: "The Agency's error forced plaintiff and her attorneys into this Court, and their persistence resulted in correction of the error. Denial of fees to her attorneys for their services is inconsistent with the purposes of the Social Security Act and the EAJA." *Id.* at 1323. *See also MacDonald v. Schweiker,* 553 F.Supp. 536 (E.D.N.Y.1982) (Pratt, J.) (fees granted after case was remanded for reconsideration by appeals council.) [3]

■ (2) Defendant next argues that the plaintiff has not "incurred" any fees here, since she was represented free of charge by a Legal Services organization. Plaintiff maintains that the term "incurred" as used in the statute should not be given a narrow

reading requiring the plaintiff to be actually liable for the fees awarded.

The question presented here has been considered by various district courts, with inconsistent results. *Compare Cornella v. Schweiker,* 553 F.Supp. 240 (D.S.D.1982) (plaintiff must be actually liable for fees) and *Hornal v. Schweiker,* 551 F.Supp. 612, 616 (M.D.Tenn.1982) (fees recoverable by legal services organization). After considering the opinions analyzing this question, I am persuaded that fees should be available here despite the *pro bono* nature of the services rendered.

Although a literal reading of the statute alone supports the defendant's argument, the legislative history of the statute provides a strong indication that the word "incurred" should not be interpreted narrowly. As Judge Wiseman observed in *Hornal v. Schweiker,* 551 F.Supp. 612, 616 (M.D.Tenn. 1982), the House Report on the EAJA states:

> In general, consistent with the above limitations, the computation of attorney's fees should be based on prevailing market rates without reference to the fee arrangements between the attorney and client. The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant to the computation of compensation under the Act. In short, the award of fees is to be determined according to general professional standards.

H.R.Rep. No. 96–1418, *supra,* at 4994.

Based upon this legislative history, I am persuaded that Congress did not intend the

---

**3.** It should be noted as well that the nature of the remand order here renders it unlikely that the case will return to this Court. Although the action was remanded for a *de novo* determination of the plaintiff's claim, based on the current state of the record it is improbable that on remand the Secretary will once again find nondisability. Thus, it is likely that the plaintiff will not have another opportunity to petition this Court for fees. In this regard the case is unlike *Roman v. Schweiker,* 559 F.Supp. 304, (E.D.N.Y.1983), wherein Judge Platt denied fees after the matter had been remanded for a more specific determination.

As to the defendant's argument that it would be unfair to assess fees at this time because the remand order is nonappealable, the simple answer is that the award of fees here presumably is immediately appealable. *See Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); *United States Steel Corp. v. United Mine Workers of America,* 456 F.2d 483 (3d Cir.), *cert. denied,* 408 U.S. 923, 92 S.Ct. 2492, 33 L.Ed.2d 334 (1972). If, on appeal, the defendant could establish that the initial remand order was erroneous, it could certainly demonstrate that the position of the United States was "substantially justified."

term "incurred" as used in the EAJA to limit recovery to those fees for which a plaintiff is actually liable. In addition to being supported by legislative history, this result serves to insure that legal services groups, and other *pro bono* counsel, have a strong incentive to represent indigent social security claimants. This is consistent with the goals of the Social Security Act and the EAJA.[4] I therefore join with those courts that have held fees to be recoverable under these circumstances. *See San Filippo v. Secretary,* 564 F.Supp. 173 (E.D.N.Y.1983) (McLaughlin, J.); *Kaufman v. Schweiker,* No. 82 Cv. 0511 (M.D.Pa. March 8, 1983); *Kinne v. Schweiker,* No. 80 Cv. 81 (D.Vt. December 29, 1982); *Ocasio v. Schweiker, supra; Hornal v. Schweiker, supra.*[5]

■ (3) Defendant contends as well that the position of the United States in this action was "substantially justified," thus precluding the award of fees. Plaintiff, not surprisingly, maintains that the position of the government was entirely unjustified.

It should be noted at the outset that there is some confusion as to what is meant by the "position of the United States." Courts have divided on this issue, some finding that the "position" referred to in the EAJA is the government's position at both the Administrative and District Court level, *see MacDonald v. Schweiker, supra,* while others have found that the position refers solely to the government's position in the "civil action" for which the fees are requested. *See Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387 (Fed. Cir.1982); *Smith v. Schweiker,* 563 F.Supp. 891 (E.D.N.Y.1982) (Nickerson, J.). I do not find it necessary to resolve this issue here, since the position of the United States at the administrative level was identical with their position in this litigation, i.e., that the determination of the ALJ was supported by substantial evidence.

The test of whether the position of the United States was substantially justified is essentially one of reasonableness. "Where the government can show that its case had a reasonable basis both in law and fact, no award will be made." *Broad Ave. Laundry & Tailoring v. United States, supra,* 693 F.2d at 1391 (citations omitted). The determination of "reasonableness" turns on the particular circumstances of the case, and the mere fact that the United States was not the prevailing party does not necessarily mean that its position was not substantially justified. *See id. See also Smith v. Schweiker, supra* ("substantially justified" means that the dispute was "genuine"). The burden to prove "substantial justification," however, rests on the government. *See* H.R.Rep. No. 96–1418, *supra* at 4989.

---

4. The EAJA was designed to insure that individuals would not be deterred in challenging unreasonable governmental action "because of the expense involved in securing vindication of their rights." H.R.Rep. No. 96–1418, *supra* at 4984. "The bill rests on the premise that a party who chooses to litigate an issue against the government is not only representing his or her own vested interest but also is refining and reformulating public policy." *Id.* at 4988. The Social Security Act "is remedial or beneficent in purpose, and, therefore, to be 'broadly construed and liberally applied.'" *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975) (quoting *Gold v. Secretary,* 463 F.2d 38, 41) (2d Cir.1972)).

The result reached here will encourage legal services groups and other *pro bono* counsel to represent indigent social security claimants. This result is entirely consistent with the legislative policy set forth above.

5. This result is also supported by judicial interpretations of the word "incurred" as used in the fee provisions of the Freedom of Informa-

tion Act. *See Cunningham v. F.B.I.,* 664 F.2d 383, 385 n. 1 (3d Cir.1981); *Crooker v. United States Dept. of Treasury,* 634 F.2d 48 (2d Cir. 1980); *San Filippo v. Secretary,* 564 F.Supp. 173, *supra.*

As to the argument that imposing fees here results in a double liability for the government in that legal services organizations already receive federal funds, I note that this fact has never precluded the award of fees for federal or state funded agencies under other fee-shifting statutes. *See, e.g., Shadis v. Beal,* 685 F.2d 824, 833 (3d Cir.), *cert. denied,* — U.S. —, 103 S.Ct. 300, 74 L.Ed.2d 282 (1982); *Dennis v. Chang,* 611 F.2d 1302, 1307 (9th Cir.1980). *See also Kaufman v. Schweiker, supra* (rejecting "double-dipping" argument). Further, it would be counterproductive to permit the United States to fund legal services organizations and then deplete the resources of these groups by requiring them to expend time and effort challenging obviously unreasonable agency actions.

Plaintiff here submitted to the Secretary reports from her treating physician, Dr. Slanetz, which stated that plaintiff was suffering from recurrent phlebitis and recurrent lumbar disc disease with motor weakness. These reports indicated that she also suffered from recurrent bronchitis, recurrent costochronditus, gastritis, lumbar and cervical muscle spasm, recurrent cystitis, and pyelonephritis. Dr. Slanetz's opinion was that these combined conditions left plaintiff "with stamina insufficient to handle the demands of full-time employment" (T 96).

The record also contains the report of Dr. Eugene Calvelli, an internist who conducted a consultative examination for the Secretary. He reported that plaintiff had recurrent lumbar disc syndrome and recurrent thrombophlebitis of both legs. Although Dr. Calvelli determined that plaintiff could probably sit for four hours, stand for two hours, and walk for two hours in an eight hour day, he concluded "that the patient is totally disabled for work and . . . that rehabilitation would be difficult if at all possible" (T 102).

Despite this evidence of total disability,[6] the ALJ determined that the plaintiff's impairments were not sufficiently severe to qualify for an award of benefits. In reaching this determination the ALJ relied exclusively on the report of Dr. Abramson, a consultative physician who did not examine the plaintiff but reviewed the medical evidence of record (T 115).

Dr. Abramson discounted claimant's history of deep vein thrombosis because the file lacked a venogram. He discounted her history of chronic lumbar disc syndrome because her file lacked clinical evidence of neurological deficits. He was doubtful that the claimant had arthritis because the plaintiff's x-rays appeared to be normal. Dr. Abramson concluded that because of the lack of test results the claimant had failed to establish the requisite severity of her disability.

The claimant's attorney advised the Administrative Law Judge by a letter dated October 2, 1980 (T 120) that Dr. Slanetz had told the claimant that a venogram or phlebogram was unwise in diagnosis of acute thrombophlebitis because it could dislodge blood clots. The claimant's attorney further reported Dr. Slanetz's advice that external tests for thrombophlebitis, such as those Ms. Ceglia had undergone, were appropriate, safe and probative. Despite this letter, and the other evidence of record, the ALJ concluded that because of the report of Dr. Abramson he "must find that the evidence does not establish that the claimant's impairments [are sufficiently severe]." (T 15).

The position of the United States in this litigation was that the decision of the Secretary, resting as it did on the report of Dr. Abramson, was supported by substantial evidence in the record. I find that this position was not substantially justified.

The ALJ here relied on the report of a non-examining physician which directly contradicted not only the reports of the claimant's treating physician, but also the report of the consultative physician who had examined the plaintiff. Further, the report of this non-examining consultative physician recommended tests that the treating physician viewed as potentially life threatening.

■ The law is clear that the opinion of a physician who has never treated or examined the claimant is entitled to little weight, and generally cannot serve as substantial evidence supporting a finding of nondisability when the record contains detailed contradictory opinions by physicians who have examined or treated the claimant. *See, e.g., Allen v. Weinberger,* 552 F.2d 781 (7th Cir.1977); *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir.1974); *Browne v. Richardson,* 468 F.2d 1003 (1st Cir.1972); *Gudlis v. Califano,* 452 F.Supp. 401 (N.D.Ill.1978). In the light of this clear precedent, the decision of the Secretary, resting as it did solely on the contradictory opinion of a non-examining physician, was patently unsupported by substantial evidence. This ob-

**6.** Total disability is required to receive widows' benefits. 42 U.S.C. § 423(d)(2)(B).

vious defect in the Secretary's determination rendered the position of the United States in this litigation unreasonable, and hence not substantially justified.[7]

(4) The final question to be considered here is the reasonableness of the fees requested. Plaintiff's attorney has submitted an affirmation recording 36.5 hours of work altogether. Of this total, approximately 9 hours were spent researching the law concerning the merits of appealing the Secretary's decision, drafting the complaint, and preparing an *in forma pauperis* affidavit. Approximately 9 more hours were spent in drafting the dispositive motion.[8] Approximately 9 hours were spent preparing the attorney's fee motion, and approximately 9 more hours were spent on various matters including scheduling problems and appearing for a status conference. Plaintiff requests compensation in the sum of $75. per hour.

After examining the affirmation submitted, I find that $75 per hour is a reasonable fee for the services rendered. I find, however, that although the memoranda submitted by the plaintiff were of a consistently high quality and clearly required time and diligence to prepare, the hours devoted to the work performed were slightly excessive. After considering the work performed, the plaintiff is granted compensation for 20 hours of attorney time, which in my view represents a reasonable fee for the work involved.[9]

Plaintiff is therefore awarded attorney's fees for 20 hours at $75 per hour, or $1,500.

SO ORDERED.

---

7. I note as well that the position of the United States in this litigation, although unreasonable, is not at all atypical of the government's position in many social security cases. I have found in numerous cases that the government will not confess error, but rather will defend the position of the Secretary no matter how egregious the administrative record may appear. This policy apparently is based on the refusal of the Secretary to consent to reversal or remand even when advised to do so by the United States Attorney's Office. If the United States Attorney's Office would be more discriminating in the social security cases it was willing to defend, it would be of great service to the already overburdened courts, and would enhance the government's credibility in those cases it did choose to defend.

8. Although the plaintiff's motion was incorrectly cast as one for summary judgment, this was a mere technical error which in no way delayed the proceedings.

9. As a final matter, it should be noted that the defendant does not contest plaintiff's status as a qualifying "party" under 28 U.S.C. § 2412(d)(2)(B).