**SOCIETY FOR GOOD WILL TO RETARDED CHILDREN, INC., et al., Plaintiffs,**

v.

**Mario M. CUOMO, as Governor of the State of New York, et al., Defendants.**

No. 78–Civ.–1847.

United States District Court, E.D. New York.

Nov. 17, 1983.

Murray B. Schneps, Michael S. Lottman, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of New York, New York City by Caren S. Brutten, William J. Caplow, Frederick K. Mehlman, Asst. Attys. Gen., New York City, Alan M. Adler, Deputy Counsel State of New York, Albany, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Plaintiffs have obtained extensive relief in this class action challenging conditions and practices at Suffolk Developmental Center. *Society for Good Will to Retarded Children, Inc. v. Cuomo*, 572 F.Supp. 1300 (E.D.N.Y.1983). They now move for counsel fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976. 42 U.S.C. § 1988.

Although a hearing on this matter would have provided helpful insights into the rele-

vant realities of current law practice and its economics, this motion is decided on written submission on the request of all parties. *Cf. Williams v. Alioto,* 625 F.2d 845, 849 (9th Cir.1980) (*per curiam*) (no requirement of evidentiary hearing for section 1988 fee determination), *cert. denied,* 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981); *Konczak v. Tyrrell,* 603 F.2d 13, 19 (7th Cir.1979) (affidavits and briefs are adequate to decide fee issue), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469–70 (2d Cir.1974) (*Grinnell I*) (in equitable fund cases the "court should typically take pains to allow a complete airing of all objections to a petitioner's fee claim").

## I. BACKGROUND

Plaintiffs filed this action in August of 1978. There followed numerous motions and hearings and a twenty-one day trial in 1982. *See Society for Good Will to Retarded Children,* 572 F.Supp. at 1353, for a detailed procedural history. The docket sheet's 296 entries provide some indication of the enormous work required of counsel. More than fifty witnesses were heard and over 300 exhibits received.

During the entire litigation Mr. Murray B. Schneps has represented plaintiffs. He was plaintiffs' sole counsel until March 1982, approximately one month before the start of trial. At that time Mr. Michael S. Lottman joined him as trial counsel.

Mr. Schneps is a sole practitioner with his office in Manhattan. He has been practicing law for twenty years. For the last fourteen years he has worked extensively in litigation involving the legal rights of the handicapped. Among other cases, Mr. Schneps participated in the *Willowbrook* litigation. *New York State Association. for Retarded Children, Inc. v. Carey,* 393 F.Supp. 715 (E.D.N.Y.1975).

Mr. Lottman is also experienced in this type of litigation. He serves as a hearing master for the Federal District Court in Philadelphia for the *Penhurst* case. *Halderman v. Penhurst State School and Hospital,* 612 F.2d 84 (3rd Cir.1979), *rev'd and remanded,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), *on remand,* 673 F.2d 647 (3rd Cir.1982). He was admitted to the bar in 1969 and for the past ten years has concentrated his practice in the field of the legal rights of the handicapped, especially mentally disabled persons.

Both Mr. Schneps and Mr. Lottman represented their clients with extraordinary skill and tenacity. This case was strongly contested by the State of New York. In the preliminary stages the state was represented by the well known New York firm of LeBoeuf, Lamb, Leiby and MacRae. During the trial defendants were represented by three or more Assistant Attorney Generals.

## II. PREVAILING PARTY

In civil rights actions "the Court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. "The purpose of section 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting H.R.Rep. No. 94–1558, p. 1 (1976)). Plaintiffs are the prevailing parties. They have obtained substantial relief from this Court on almost all issues. *See Society for Good Will to Retarded Children,* 572 F.Supp. 1352 (E.D.N.Y.1983). The threshold statutory requirement that they prevail on some aspect of their claim for relief has been met. *See Hensley v. Eckerhart, supra,* 103 S.Ct. at 1939.

## III. COMPUTATION OF FEES

The statute requires fixing of a "reasonable attorney's fee". 42 U.S.C. § 1988. Computation begins with a determination of the number of hours reasonably expended by the prevailing party's counsel; that number is then multiplied by a reasonable hourly rate. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40; *Cohen v. West Haven Bd. of Police Commissioners,* 638 F.2d 496,

505 (2d Cir.1980); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir.1977) (*Grinnell II*) ("lodestar" approach); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974) (*Grinnell I*). *See generally* 2 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 16 (1983). The Court may then adjust this figure to compensate counsel for factors such as risk, quality of representation and results obtained. *See Hensley v. Eckerhart*, 103 S.Ct. at 1940; *New York Association for Retarded Children, Inc. v. Carey*, ("*NYSARC*"), 711 F.2d 1136, 1153 (2d Cir.1983).

Based on the legislative history of section 1988 the Supreme Court has indicated that the following factors should be considered in determining a fee:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Hensley v. Eckerhart*, — U.S. —, 103 S.Ct. 1933, 1937 n. 3, 76 L.Ed.2d 40. While all these factors have not been referred to separately below, each has been considered in arriving at the final award.

### A. Hours

Plaintiffs have submitted detailed affidavits in support of their claim for 3406.89 hours. Most of those hours represent work by Mr. Schneps (2747.89), with the remainder being hours of Mr. Lottman (659). In general the affidavits of both attorneys identify the date, nature of the work done, and hours worked in conformity with this circuit's requirements. *See NYSARC*, 711 F.2d 1136, 1147–48.

For the period May through June of 1978, Mr. Schneps does not provide a breakdown for the work done. He claims 20.5 hours to "review questionnaires, information and documents, research and general organization of complaint." Again for July of 1978, he claims 38.5 hours for "research, telephone calls, drafts and preparation of complaint." The *NYSARC* requirement of specific documentation, however, applies only to work done after the date of that opinion, June 15, 1983. Moreover, this amount of time, 59 hours, is negligible. It is entirely reasonable as measured by the documents and other preparatory work required during this period.

At all stages of this case plaintiffs' lawyers have kept their hours remarkably low. They were able to proceed with only one or two lawyers. The total number of hours claimed, 3406.89, is entirely reasonable, especially in comparison to those in similar class action cases challenging conditions at institutions for the mentally disabled. *See NYSARC*, 711 F.2d 1136, 1147–48 (in similar class action challenging conditions at state facility for the mentally retarded district court allowed 11,034 hours and denied 5377 hours for work of eight lawyers; Second Circuit upheld with exception of 322 hours); *Association for Retarded Citizens v. Olson*, 561 F.Supp. 495, 501, 502, 508 (D.N.D.1982) (allowing over 5000 hours in class action challenging conditions and treatment of mentally retarded persons). As the Supreme Court has noted, "[c]ases may be overstaffed". *Hensley v. Eckerhart*, — U.S. —, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40. This one was not.

### 1. Travel Time

Plaintiffs seek compensation for 104.75 hours for time Mr. Lottman spent traveling from Washington, D.C. and Philadelphia to New York. Mr. Lottman resides in Washington, D.C. and conducts most of his business in Philadelphia. His participa-

tion in this case as trial counsel along with Mr. Schneps required travel. The defendants urge that this time is not properly charged to them.

There is no consensus on the point. One court has allowed full compensation for time spent in travel. *See Chrapliwy v. Uniroyal, Inc.*, 509 F.Supp. 442, 454–55 (N.D.Ind.1981) (Title VII class action), *aff'd in relevant part*, 670 F.2d 760 (7th Cir. 1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2428, 77 L.Ed.2d 2428 (1983). Some courts have refused to award any time for travel. *See Thomas v. Board of Education*, 505 F.Supp. 102, 104 (N.D.N.Y.1981); *NAACP v. Bell*, 448 F.Supp. 1164, 1168 (D.D.C. 1978), *rev'd on other grounds*, 609 F.2d 514 (1979), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1114 (1980). Several courts have granted compensation, but at a lower rate than that allowed for activities such as court appearances and research. *See Dunten v. Kibler*, 518 F.Supp. 1146, 1152 & n. 5 (N.D.Ga.1981); *McPherson v. School District No. 186*, 465 F.Supp. 749 (S.D.Ill.1978); *Keyes v. School District No. 1*, 439 F.Supp. 393 (D.Colo.1977). The Second Circuit has not addressed this issue.

The legislative history of section 1988 supports allowing compensation for lawyer's travel time. The Senate Report states that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted* in 1976 U.S.Code Cong. & Ad.News 5908, 5913 (1976) (quoting *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974)). Law firms generally bill their clients for travel time. Moreover, in order to effectuate the guiding purpose of the act, to enable private citizens to "have a meaningful opportunity to vindicate" their rights, S.Rep. No. 1011 at 2, 1976 U.S.Code Cong. & Ad.News at 5910, plaintiffs must be able to hire experienced attorneys. Mr. Lottman is a specialist in the field of the legal rights of the mentally disabled. His participation enabled plaintiffs to obtain necessary expertise in the area. Using such out-of-town

specialists may save money since the expert will not waste time pursuing fruitless theories. *See Chrapliwy v. Uniroyal, Inc.*, 509 F.Supp. 442, 455 (granting attorneys fees for travel time "will allow attorneys of special skill ... to provide their skills in areas not within their immediate geographical reach").

The court takes judicial notice of the fact that current practice is for lawyers to charge their clients for travel time required by their legal work. *See* Rule 201, Federal Rules of Evidence. Generally the lawyer will spend time in transit working on the litigation. *See Chrapliwy*, 509 F.Supp. 442, 454–55. The Court assumes that Mr. Lottman, as do most lawyers, spends his time traveling preparing for his court appearances. It is said that a lawyer argues three cases: one while traveling to court reflecting on what he or she will do, one while actually in court, and another after leaving court, ruminating on what should have been said and deciding how to repair any errors.

Nevertheless, to grant the full amount for the time Mr. Lottman spent in traveling is unreasonable. The time he spent in transit may have been beneficial, but it probably was not as productive as time at the office or in court. *See Keyes v. School District No. 1*, 439 F.Supp. 393, 409; *cf. Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505 (2d Cir. 1980) ("a different rate of compensation may well be set for different types of litigation tasks"). Although attorneys may well charge private clients for all travel time, in view of the inefficiencies involved, the award in this civil rights case will be for 50% of the travel hours at the full rate. *See Keyes*, 439 F.Supp. at 409–10.

### 2. *Press Conferences*

■ Plaintiffs claim 9⅚ hours for communications with newspapers and television stations and for press conferences. There is no precedent for awarding fees for such work. These are not hours "expended on the litigation." *Hensley v. Ecker-*

*hart,* —— U.S. ——, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40. Although press coverage may have helped plaintiffs' case, this was not legal work recoverable under section 1988. Accordingly, compensation for the 9⅖ hours spent in communication with the press is denied.

### 3. *Filing, Delivery and Service*

■ Plaintiffs include in their request for attorney's fees, 23 hours for filing, delivery, and service of papers. As with the press contacts, this time does not properly belong in the category of legal work for which a premium rate may be sought. It does not require a highly skilled lawyer to file papers. *See Rajender v. University of Minnesota,* 546 F.Supp. 158, 166 (D.Minn.1932). This work is normally subsumed within an attorney's overhead. These 23 hours are denied.

### 4. *Excessive Time*

Defendants object to several of Mr. Schnepps's daily claims as containing an excessive amount of hours. They specifically point to several days when Mr. Schneps seeks compensation for over fourteen and up to eighteen hours. These days are close to the March 1982 trial. The amount of time is not unreasonable for a conscientious lawyer, especially when that lawyer does not have assistance of associates, but must do all the preparatory work himself. Mr. Schneps's courtroom work clearly revealed that he was working long hours.

Defendants also assert that plaintiffs should not be compensated for hours spent pursuing unsuccessful discovery motions and rearguing a few court rulings. Plaintiffs have obtained excellent results in the case and should not be penalized for a few minor tactical losses along the way. In *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, the Court held that

> [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. In these circumstances the fee award should not be re-

duced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

Defendants request trimming of "the fat", see *NYSARC,* 711 F.2d 1136, 1146, from plaintiffs' claim by reducing the total number of hours by a percentage. Their request assumes there is fat to be trimmed. In *NYSARC,* the Second Circuit approved Judge Bartels's use of percentage cut as a realistic way of eliminating excessive hours from a voluminous fee application. *Id.* In this case, the few troublesome claims have been eliminated or reduced. There is no basis for further reductions.

The contentions of defendants raise once again the serious reservations which have been entertained by trial courts and others about excessive reliance upon the lodestar approach. Perhaps it is time to reconsider the matter in light of recent developments in law and practice which tend to minimize the importance of the total hours worked in favor of other factors. In *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, for example, the Court emphasized that a party submitting a claim under section 1988 should use "billing judgment" in assessing his or her total hours. The Court also emphasized the importance of "results obtained" in determining the final fee award. *Id.* at 1940.

The 1983 amendments to the Federal Rules of Civil Procedure put attorneys on notice that excessive discovery hours should not be permitted. *See generally,* Communication from the Chief Justice of the United States, House Doc. No. 54, 98th Cong., 1st Sess. (1983); P. Rothstein, The New Amendments to the Federal Rules of Civil Procedure (1983); National Conference on Discovery Reform, Conference Proceedings, 3 Rev. of Litigation 1 (1982). It is now understood that discovery procedures using associates and paraprofessionals without adequate control by senior litigation partners can build up cost of litigation unnecessarily. Computation of fees on an hourly basis may encourage wasteful inflation and abuse of discovery. Clients are increasingly becoming more sophisticat-

ed about the costs of legal services and are paying more attention to the results they obtain than hours logged. Billing practice is beginning to reflect that return to older virtues and good sense. *See, e.g.,* Brill, *Fickle Fees,* American Lawyer 1 (September 1983).

As this case demonstrates, attorneys with great expertise may obtain excellent results without running up an inordinate number of hours with the aid of large staffs. Their fee should reflect their ability to save hours; they should not be penalized for being efficient.

### B. *Rate*

█ Plaintiffs seek compensation at $175 per hour for the time of both Mr. Schneps and Mr. Lottman. The proper hourly rate to be applied in a section 1988 attorneys fees application is one "normally charged for similar work by attorneys of like skill in the area." *Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 505 (2d Cir.1980) (quoting *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098 (2d Cir.1977)). That amount should not produce a windfall to the attorneys. *See New York Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1149. In the case of non-profit organizations, fees should be calculated under the like skill standard up to the "break point" when a higher fee would provide such a windfall. *Id.* at 1152.

█ Defendants claim that to compensate the lawyers in this case at $175 an hour would provide a windfall and in addition they assert that Mr. Lottman falls into the category of a public interest lawyer governed by the standards set forth in *NYSARC.* *NYSARC,* however, dealt with non-profit organizations, the Legal Aid Society, and the American Civil Liberties Union. *Id.* at 1154. Mr. Lottman was not employed by such an organization for work on this case. He was associated with an independent attorney. He paid his secretary separately and did much of his work out of Mr. Schneps's office. For purposes of this case, he must be deemed a sole practitioner.

Mr. Schnepps's regular hourly rate was $100 in 1978, $125 in 1980, and currently it is $150. He seeks compensation at the rate of $175 per hour because of the contingent nature of this litigation and because of its complexity. Mr. Lottman does not have a "regular" rate. He works as a court-appointed hearing master in Philadelphia at a salary of $50,000 a year. He too seeks compensation at $175 per hour.

Plaintiffs submitted affidavits asserting that $175–225 per hour is the rate lawyers of comparable skill to that of Mr. Schneps and Mr. Lottman would command. For the period 1978 through March 31, 1980 defendants paid LeBoef partners at the rate of $100 per hour and associates at $75 per hour; for the remaining period of 1980 they billed respectively at $135 and $95 per hour. Since then rates have risen.

The court has considered all the information provided by the parties as well as general knowledge of prevailing rates in the New York legal community. The current reasonable rate of compensation for both Mr. Schneps's and Mr. Lottman's time is $150 per hour.

Plaintiffs' lawyers did not have the assistance of associates or paralegals, but did all the work themselves. It is urged that not all of their time should be compensated at the relatively high $150 per hour rate because they could have used assistants at lower rates.

Were this a large firm submitting a claim for legal services under section 1988, smaller per hour fees for associate and paralegal services would be expected. Use of such assistants does sometimes reduce litigation costs. Legal publications and court decisions increasingly recognize the important role the use of paraprofessionals plays in reducing legal costs. *See, e.g., Pacific Coast Agricultural Export Association v. Sunkist Growers, Inc.,* 526 F.2d 1196, 1210 (9th Cir.1975), *cert. denied,* 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976) ("As a matter of policy, the use of paralegal help ... greatly reduces the cost of legal serv-

ices to the public and is thus a practice to be encouraged."); Pollack, How Paralegals Pay Off Big, American Lawyer (March 1983) ("Using paralegals instead of associates for ... routine assignments will help hold client bills down, and ... may be the key to competing successfully during difficult economic times."); Use of Paralegals Makes Good Business Sense, 69 A.B.A.J. 1626 (1983); *see generally* 2 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 16.02 (1983).

Arguing against a reduction of average hourly rates is the fact that utilizing highly skilled individual practitioners may have time-savings benefits. With expert knowledge, a lawyer can go directly to material it might take a junior associate or paralegal many hours to find. In this case the Court's own observation of plaintiffs' counsel suggests that they were able to substantially reduce time expenditures by calling on their extensive experience gained by participating in similar large class actions challenging conditions of institutions for the mentally retarded.

Each case must be decided on its own facts. In this case the actual costs of litigation were reduced by plaintiffs' attorneys expertise and by their doing all the work without assistance.

*In New York Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983), the Second Circuit held that in some cases lasting over three years, a court must analyze the case in two phases, awarding historic rates for the early phase. *Id.* at 1153. This case began in 1978.

Accordingly, this Court awards $100 per hour for Mr. Schneps's time from the filing of the complaint through the end of 1980, and $150 per hour for his remaining time. *See id.* ($50 per hour for 1972–1977 and $75 per hour for 1977–1983). Mr. Lottman's work was all done in 1982 and 1983; all his time is compensated at the $150 per hour rate.

### C. *Multiplier*

■ In a civil rights case, the court may adjust the prevailing party's fee upward to compensate counsel for " 'the risk and complexity of the case, the results achieved and the superior advocacy of counsel.' " *NYSARC,* 711 F.2d 1136, 1153 (quoting *NYSARC,* 544 F.Supp. 330, 342 (E.D.N.Y.1982)). *See also Hensley v. Eckerhart,* ⎯ U.S. ⎯, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (results obtained); *Beazer v. New York City Transit Authority,* 558 F.2d 97, 100 (2d Cir.1977) (complexity and benefits to clients), *reversed on other grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). The Supreme Court recently has emphasized the factor of "results obtained" in adjusting a fee award under section 1988. *Eckerhart,* 103 S.Ct. at 1940.

■ Applying these criteria, plaintiffs' counsel plainly deserve a bonus. Initiation of the suit itself improved conditions at the Suffolk Developmental Center. *See Society for Good Will to Retarded Children,* 572 F.Supp. 1351 (E.D.N.Y.1983). The Court's final decree granted plaintiffs extensive relief and the plan implemented by the decree will result in better treatment and care for the members of the plaintiff class.

Under the risk and complexity factor, plaintiffs are also entitled to some increase in their base fee. As in the Willowbrook case, *see NYSARC,* 711 F.2d at 1153, this case involved difficult and novel questions of constitutional law. Finally, plaintiffs' lawyers are not non-profit lawyers subject to *NYSARC's* prohibition of a bonus for risk. *See id.* at 1154–55.

Mr. Schneps is an attorney for whom compensation for risk is particularly appropriate. He is a sole practitioner who has spent much of his time during the past five years on this case. Undoubtedly he had to forego other employment while all his energies were so engaged. He risked a great deal in prosecuting this matter.

Based on these considerations a multiplier of 1.25 is equitable. Such an award comports with those in comparable cases in this circuit. *See NYSARC,* 711 F.2d at 1154 (1.10); *Vulcan Society v. Fire Department,* 533 F.Supp. 1054, 1066 (S.D.N.

Y.1982) (1.5); *Ross v. Saltmarsh,* 521 F.Supp. 753, 770–72 (S.D.N.Y.1981), *aff'd without opinion,* 688 F.2d 816 (2d Cir. 1982) (1.25); *Stenson v. Blum,* 512 F.Supp. 680, 685 (S.D.N.Y.), *aff'd without opinion,* 671 F.2d 493 (2d Cir.1981), *cert. granted,* — U.S. ——, 103 S.Ct. 2426, 77 L.Ed.2d 1314 (1983) (1.5); *Population Services International v. Carey,* 476 F.Supp. 4, 12 (S.D.N.Y.1979) (1.5).

A 1.25 multiplier is quite modest in light of the excellent work done by plaintiffs' attorneys, the results they obtained, and the risks they undertook. While somewhat unfair to plaintiffs' counsel, it is appropriate to consider that indirectly litigation funds are deductible from funds available for actual treatment and care of the mentally retarded. A court should not reduce an attorney's fee award because one party is a governmental agency, but it may consider the wealth of the parties in setting the fee. *See Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 505 (2d Cir.1980). The defendant is not without resources, but the many demands on its funds for public purposes suggest that litigation costs should be reduced to the minimum consonant with fairness to plaintiffs' counsel. Those lawyers who become involved in cases such as this one do not do so for economic gain; rather their work reflects compassion for those in plaintiffs' position. They need and deserve to be paid for their efforts. But a balance must be struck between compensating the attorneys for their excellent work and refraining from exhausting available state monies.

### D. *Expenses*

In civil rights cases the prevailing party may recover all reasonable expenses. *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.) (*en banc*), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Northcross v. Board of Education,* 611 F.2d 624, 639–40 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *cf. Keyes v. School No. 1,* 439 F.Supp. 393, 416–17 (D.Colo.1977)

(only allow those costs provided for under 28 U.S.C. § 1920).

### 1. *Travel, meals, hotels*

Defendants assert that plaintiffs' expense claims are unreasonable, pointing specifically to Mr. Lottman's train fares, and some meal, hotel and taxi bills. The train fares are reasonable for the same reason Mr. Lottman's travel time is billable. *See supra. See also Northcross,* 611 F.2d at 639; *McPherson v. School District No. 186,* 465 F.Supp. 749, 763 (both allowing travel expenses). In general the meal and hotel expenses fall into the same category as travel expenses. Several claims are, however, somewhat high— though no higher than that usually charged to clients by senior attorneys. Rather than reexamine each individual meal, hotel or taxi claim, the Court finds that a reduction of 10% from the travel, meal and hotel claims eliminates any possible excessive expenses. *See McPherson,* 465 F.Supp. at 763 (15% cut in travel and phone expenses); *cf. NYSARC,* 711 F.2d 1136, 1146 (percentage cut in hours).

### 2. *Secretarial expenses*

Plaintiffs seek reimbursement for special secretarial services in the amount of $384. Secretarial services are part of overhead expenses and are not generally charged to clients. Part of the reason lawyers receive a premium rate is to pay for such expenses. *NYSARC,* 711 F.2d 1136, 1150. *See also Hild v. Bruner,* 496 F.Supp. 93, 100 (D.N.J.1980) (clerical expenses "must be subsumed under counsel's hourly rate for services").

### CONCLUSION

Plaintiffs are prevailing parties and are entitled to attorney's fees. They are to submit a judgment for fees and costs in accordance with this opinion with 5 days notice to the defendants.

SO ORDERED.