Rosalyn ZIMMERMAN, Plaintiff,

v.

Richard SCHWEIKER, Secretary, H.H.S., Defendant.

No. CV–82–2217.

United States District Court, E.D. New York.

Dec. 5, 1983.

Meltzer & Fishman by Harold Fishman, New York City, for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Plaintiff was denied disability benefits by the Secretary. This court reversed and ordered benefits. 42 U.S.C. §§ 416(i), 423. Plaintiff now applies for attorney's fees pursuant to the Equal Access to Justice Act. 28 U.S.C. § 2412(d). Since the government's position was unreasonable and without justification, fees are granted.

## I. FACTS

Mrs. Zimmerman has endured pain and physical limitation for all of her adult life. At the age of 12, she had a low left thigh amputation as a result of a severe form of cancer. A prosthesis was fitted to the short stump that remained. Despite this severe handicap, she earned a master's degree and worked as an English teacher and guidance counselor.

In October 1980, the plaintiff, then 56 years old, was hit by an elevator door at her high school. Thrown to the floor, she suffered a concussion, her prosthesis was broken and she injured her right knee, back and elbows.

As a result of the accident, plaintiff has been suffering severe back pain. Her ability to move her lower torso and right knee is greatly limited. Refitting of her prosthesis was complicated by a steel support belt she must now wear that interferes with normal hip action, further restricting her· movements. The brace causes pain and swelling in her right leg and makes any walking or climbing unbearably painful.

In spite of these adversities, plaintiff tried to return to her job. Her unsuccessful attempts to work only exacerbated her condition. She was cautioned by her doctors to remain at rest.

The Administrative Law Judge found plaintiff not disabled because her medical problems were "cured" and there was no recent medical evidence of pain. This finding is contradicted by the record which abounds with evidence of both harrowing pain and severe physical impairment.

On two occasions, in May 1981 and August 1981, the Board of Education's Medical Bureau found that plaintiff was unable to move her right leg, trunk and shoulder without experiencing pain and that "forward flexation of the trunk was impossible due to pain." Dr. Nadar Sharon, a consultant to the Secretary, reported in September 1981 that plaintiff moves "with much difficulty and pain." Her treating physician, Dr. Joseph R. Van Dyne, reported similar findings. In June 1981, he reported that as a result of the 1980 accident, plaintiff "has considerable difficulty in walking" and was experiencing pain in her right leg. In August 1981, after plaintiff's claim was initially denied, Dr. Van Dyne wrote that she suffers "severe pain when she attempts to walk up or down a curb." The record also contains a letter from Dr. Leo J. Koven noting that x-rays indicate a "congenital disability unrelated to the accident of 1980," that would, "account for the right lower extremity radiation of her pain." Finally, a report by Dr. Koven dated December 1981, finds continued pain and predicts that plaintiff's "gait and prosthesis problem" will not materially improve in the future.

Based on the record, the court reversed and remanded for computation of benefits. It is obvious that plaintiff is no malingerer. The refusal of the Secretary to grant benefits she was entitled to as a matter of law and fact imposed economic and emotional strain that certainly worsened when ·the government chose to litigate in this court.

## II.  LAW

■ The Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), provides that attorney's fees should be awarded to a prevailing party in an action by or against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The Act is applicable to judicial review actions brought under the Social Security Act. *See* H.Rep. No. 96–1418 at 12, 1980 U.S.Code Cong. & Admin.News 4953, 4991; *McGill v. Secretary of Health and Human Services,* 712 F.2d 28, 30 (2d Cir.1983); *Guthrie v. Schweiker,* 718 F.2d 104, 107 (4th Cir. 1983); *Berman v. Schweiker,* 713 F.2d 1290, 1295 (7th Cir.1983); *Ceglia v. Schweiker,* 566 F.Supp. 118, 123 (E.D.N.Y. 1983); *San Filippo v. Secretary of Health and Human Services,* 564 F.Supp. 173, 176 (E.D.N.Y.1983); *Ocasio v. Schweiker,* 540 F.Supp. 1320, 1323 (S.D.N.Y.1982).

An award of attorney's fees pursuant to the Act provides the incentive necessary to enable persons such as plaintiff to pursue benefits they legally deserve. *See* H.Rep. 96–1418 at 5–6, 1980 U.S.Code Cong. & Admin.News 4984. Fees will be awarded unless the government, which has the burden of proof on this matter, can show that its position was substantially justified or special circumstances make an award unjust. *Ceglia v. Schweiker,* 566 F.Supp. 118, 123 (E.D.N.Y.1983).

The House Committee report states that the test of whether the government was substantially justified "is essentially one of reasonableness." H.Rep. 96–1418 at 10,

1980 U.S.Code Cong. & Admin.News at 4989. The exact standard is unclear. Several courts have held that the government will be substantially justified if its position is reasonable in law and fact. *See Hoang Ha v. Schweiker*, 707 F.2d 1104, 1106 (9th Cir.1983); *Dougherty v. Lehman*, 711 F.2d 555, 564 (3d Cir.1983); *Lonning v. Schweiker*, 568 F.Supp. 1079, 1082 (E.D.Pa. 1983); *Vega v. Schweiker*, 558 F.Supp. 52, 54 (S.D.N.Y.1983); *MacDonald v. Schweiker*, 553 F.Supp. 536, 540 n. 1 (E.D.N.Y. 1982).

One may legitimately ask what reasonableness means in this context. Reasonableness by the standard of a layman is obviously useless as a guide. Some reasonable litigation-attorney standard seems implied. Such a hypothetical litigator might ask, "Is there any substantial chance of success for my client? Am I merely going through the motions of a suit when my investigation of the law and facts convinces me that my client would and should lose?"

Some courts have attempted to give content to the reasonableness test by holding that the government fails to meet the substantially justified standard when there is "no authority for its position," *Jones v. Schweiker*, 565 F.Supp. 52, 56 (W.D.Mich. 1983); it is "patently unsupported by substantial evidence," *Ceglia v. Schweiker*, 566 F.Supp. 118, 124 (E.D.N.Y.1983); "there is little or no evidence supporting its position," *Hornal v. Schweiker*, 551 F.Supp. 612, 617 (D.Tenn.1982); there is no "genuine dispute," *Moholland v. Schweiker*, 546 F.Supp. 383, 386 (D.N.H.1982); and its position is not "wholly free from doubt," *Smith v. Schweiker*, 563 F.Supp. 891, 893 (E.D.N.Y.1982).

Defendant's position is that the no "genuine dispute" standard is proper. This contention is predicated upon the fact that the language of section 2412 mirrors the language of Rule 37(a)(4) of the Federal Rules of Civil Procedure, which requires assessing of attorney's fees if the motion for an order compelling discovery was not "substantially justified." The Advisory Committee Notes to the Rules of Civil Procedure state that the standard under Rule 37 requires the moving party to prove that the opponent's position was not based on a genuine dispute. Advisory Committee Notes, 48 F.R.D. 459, 540 (1970). Support for this position is found in *Smith v. Schweiker*, 563 F.Supp. 891, 892 (E.D.N.Y. 1982), where the court viewed Congress's use of the "substantial justification" language of the Federal Rules in the Act as a signal that the "not genuine" standard should be applied. *Accord Wolverton v. Schweiker*, 533 F.Supp. 420, 424 (D.Idaho 1982). *Contra Vazquez v. Secretary*, No. 82–0182, slip op. (D.Mass. July 5, 1983); *Ward v. Schweiker*, 562 F.Supp. 1173, 1178 n. 4 (W.D.Mo.1983).

With deference to the judges applying a "no genuine dispute" test, it appears that this strict standard does not adequately implement Congress's attempt to reduce the economic imbalance between the government and an individual claimant. *See* H.Rep. 96–1418, at 10, 1980 U.S.Code Cong. & Admin.News 4988. Such a disparity, which may or may not exist in the usual discovery situation controlled by Rule 37, invariably exists in social security disability cases. In these cases an unemployed worker is pitted against the government of the United States. The discovery sanction standard would not noticeably reduce the claimant's litigation burden or appreciably encourage him or her to contest unfavorable determinations. *See, e.g.,* H.Rep. 96–1418 at 9, U.S.Code Cong. & Admin.News 4988; *Vega v. Schweiker*, 558 F.Supp. 52, 54 n. 2 (S.D.N.Y.1983); *Nunes-Correia v. Haig*, 543 F.Supp. 812, 817 (D.D. C.1982).

Congress established a middle ground between mere proof that a party prevailed against the government and the proof that the government's position was "arbitrary, frivolous, unreasonable or groundless." H.Rep. 96–1418, at 14, 1980 U.S.Code Cong. & Admin.News 4993. The purpose of the Act was to reduce the deterrent effect presented by the high cost of litigation. *McGill v. Secretary of Health and Human Services*, 712 F.2d 28, 30 (2d

1440

Cir.1983). If successful claimants' fees were denied simply because some elements of the government's position were genuine, there would be few awards and little additional incentive for those claimants who might otherwise not contest an adverse determination.

To meet Congressional objectives, the plaintiff seeking an award of lawyers' fees against the government should not be required to show more than that the government's position was unreasonable in law or fact. If private counsel probably would have advised a client that the matter should not be litigated, then, *a fortiori*, it is unreasonable for the government to oppose the claim. In the instant case it is hard to believe that an attorney would have advised a private client to waste money on a defense of this overwhelming case for the plaintiff.

■ Any ethical and procedural obligation of a private attorney to be fair to opponents and candid with the court is enforceable when the litigant is represented by an attorney for the government. As a United States Attorney General put it more than a hundred years ago, "in the performance of ... his duty ... he is not a counsel giving advice to the government as his client, but a public officer, acting judicially, under all the solemn responsibilities of conscience and legal obligations." 6 Ops.Atty.Gen. Office and Duties of Attorney General 326, 334 (1854) (Caleb Cushing to the President). *See also, e.g., Alameda v. Secretary of Health, Education & Welfare,* 622 F.2d 1044, 1048 (1st Cir.1980) (default judgment against government for failing to file brief under Rule 55(e) of Federal Rules of Civil Procedure); *United States v. Jamil,* 546 F.Supp. 646, 652–53 (E.D.N.Y.1982), *rev'd on other grounds,* 707 F.2d 638, 645–46 (2d Cir.1983).

We cannot lose sight of the fact that claimants in these disability cases are generally poor. Obtaining counsel for them, even with the generous assistance of the pro bono panel of this district, is quite difficult. The ponderous machinery of the federal bureaucracy and United States At-

torney's Office should not be turned implacably against them unless the government has first stopped to ask itself, "Is opposing this claim just, is it fair, is there a reasonable basis for believing that the government can prevail on both the law and facts?"

Both the Equal Access to Justice Act and the 1983 Amendments to the Rules of Civil Procedure attempt to induce the lawyer to come to grips with the problem of unnecessary litigation, to encourage the attorney to exercise his or her mind and conscience in deciding whether the suit is worth prosecuting or defending. We recognize that the lawyer is not the judge; the question for the attorney, therefore, is not, "Would I, as judge or jury, decide against my client?" That would be the antithesis of the adversarial system. But it is a valid exercise of professional responsibility and ethical conduct for the lawyer to ask if the suit is being pressed because he or she believes, as a professional, that it is well-founded.

There is often a special excruciating problem for the government attorney. He or she cannot fire a client who will not take the litigator's advice, nor can the client discharge the government attorney. The law weds them to each other, except in a limited number of cases when outside counsel may be retained as in the case of conflicts of interest. Sometimes, therefore, the government attorney must defend a suit without much confidence in its merit. The Equal Access to Justice Act steps into this breach by ameliorating the cost and effect on the citizen opposing the government and by making such action more expensive to the government. The hope is that government officials in charge will be less apt to take unreasonable positions against the advice of government lawyers.

■ To achieve this goal requires a higher standard than that provided for Rule 11 certifications. For, presumably, if certification were improper the government attorney would not act or the court would impose sanctions under Rule 11. Thus an appropriate standard under the Act must be higher than the minimum standard of

Revised Rule 11 of the Federal Rules of Civil Procedure. As of August 1983, Rule 11 requires the signing attorney to make a "reasonable inquiry" and certify that the pleadings are "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R. Civ.P. 11. This language represents an attempt to increase litigators' responsibility to keep ill-founded complaints and defenses out of court. *See* Advisory Committee Notes, Communication from the Chief Justice of the United States, House Doc. No. 54, 98th Cong., 1st Sess., April 28, 1983; P.F. Rothstein, The New Amendments to the Federal Rules of Civil Procedure 8 (1983). The government's pleadings in the case before us just barely met Rule 11's requirement that they be well-grounded in fact and warranted by existing law.

Defendant's pleadings raise questions about the government's position in this and other social security disability cases. Until very recently, as reflected in the instant case, there appears to have been a policy of resisting every social security claim no matter how justified. Questioning of Assistant United States Attorneys appearing in these cases revealed that they had almost no discretion to settle these cases by stipulation. As Judge Glasser of this court recently observed:

> I have found in numerous cases that the government will not confess error, but rather will defend the Secretary no matter how egregious the administrative record may appear. This policy is apparently based on the refusal of the Secretary to consent to reversal or remand even when advised to do so by the United States Attorney's Office.

*Ceglia v. Schweiker*, 566 F.Supp. 118, 125 n. 7 (E.D.N.Y.1983).

Baseless pleadings violate not only Rule 11, but Disciplinary Rule 7–102(A)(2) of the Model Code of Professional Responsibility which provides:

> In his representation of a client, a lawyer shall not: knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for extension, modification or reversal of existing law.

No conclusion of this court should suggest that the United States Attorney for the Eastern District of New York, a person of high ethics and competence, has been violating either Rule 11 or Rule 7–102(A)(2). Yet, the statistics suggest that the government has been coming close to the line. During the month of September, this district disposed of 66 Social Security cases. Of these, 22 were dismissed in favor of the government, 32 were remanded to the Secretary, and 9 were reversed in favor of the plaintiff. (Three cases were closed for reasons unknown.) The Secretary won only 22 out of 63 cases, even though the government merely had to show that denial of an award was supported by substantial evidence. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

Apparently the United States Attorney has recently reconsidered the problem of Social Security claims. Stipulations for remands are now increasingly being offered by the government. Where the facts and law warrant, that policy undoubtedly will be extended to stipulations for outright reversal.

The government would not be making an informed decision were it to litigate every administrative determination of the Secretary. The Act as well as the Federal Rules of Civil Procedure and Rules of Ethics were intended to encourage deliberation before defense in order to avoid the waste of needless litigation. *See* H.Rep. 96–1418 at 12, 1980 U.S.Code Cong. & Admin.News 4991; M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 5.03(12) & n. 106. Congress expected that the resulting reduction in litigation would offset to some degree the expense of fee awards under the Act. H.Rep. *supra* at 20, U.S.Code, *supra* at 4999.

### III. AWARD

No matter what standard is applied, plaintiff is entitled to a fee under the Act.

**1442**

Since the government has not claimed that any "special circumstances make an award unjust," 28 U.S.C. § 2412(d)(1)(A), the plaintiff is awarded attorney's fees and expenses.

■ The Act provides for attorney's fees up to $75 per hour (subject to any cost of living increase or other special factor) and all other reasonable fees and expenses. 28 U.S.C. § 2412(d)(2)(A). Plaintiff's attorney has submitted an affirmation recording 42½ hours of work. It became clear at the hearing on this motion that much of this time was expended by an uncompensated law student whose hours cannot be included in the fee award. Under some circumstances fees for law student work might be awarded, but the court would have to be informed of the experience and training of the assistant and the rate at which he or she was paid. *See* H.Rep. 96–1418 at 22, 1980 U.S.Code Cong. & Admin.News 5002 (expenses); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir.1974); *Society for Goodwill to Retarded Children, Inc. v. Cuomo*, 574 F.Supp. 994, 1000 (E.D.N.Y. 1983).

■ Based on the affirmation, counsel's experience, the normal fees for work of this type and the excellent result reached, a fee of $75 per hour is reasonable. *Hensley v. Eckerhart*, — U.S. —, 103 S.Ct. 1933, 1937–39, 76 L.Ed.2d 40 (1983); M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶¶ 1603, 1604. Oral inquiry of the court, papers submitted by counsel and the court's observation of counsel's work, supports a finding that counsel for plaintiff reasonably expended 25 hours of his own time, including supervision of a student who worked on the case. Plaintiff is awarded attorney fees of $1875.00 and expenses of $72.00, for a total sum of $1947.00.

So ordered.