Jeannine **JENNETTE**, Plaintiff,

v.

The **CITY OF NEW YORK**, the Civil Service Commission of the City of New York, the New York City Police Department, Benjamin Ward, as Police Commissioner of the Police Department of the City of New York, Benjamin Ward, individually, the Personnel Bureau of the Police Department, Helen Tanzosh, Director of the Employee management Division of the Police Department, Helen Tanzosh, individually, and the New York City Department of Personnel, Defendants.

No. 89 Civ. 6426 (WK).

United States District Court, S.D. New York.

Sept. 1, 1992.

Joseph P. Baumgartner, Holbrook, N.Y., for plaintiff.

Randie M. Liss, Asst. Corp. Counsel, Office of Corp. Counsel of City of New York, New York City, for defendants.

OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

This case arises out of a claim of gender discrimination in violation of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2, 2000e(k). By Stipulation and Order dated January 24, 1992 the parties settled all claims, and defendants agreed to pay plaintiff the reasonable costs, expenses and attorney's fees she incurred in connection with this action. The stipulation expressly provided that the determination as to what amount is reasonable with respect to such costs would be left to the court.

By papers filed April 29, plaintiff seeks an award of attorney's fees in the amount of $77,275 [1] plus costs of $603.75. Defendants oppose that portion of the application which seeks $77,275 in attorney's fees; they do not contest the reasonableness of plaintiff's statement of costs. On July 14 we heard oral argument. For the reasons that follow, we substantially approve plaintiff's application for attorneys' fees, with certain modifications.

## BACKGROUND

The claim underlying this action was formally asserted on August 24, 1988 when plaintiff, a female police officer employed by the New York City Police Department ("NYPD"), filed a complaint with the federal Equal Employment Opportunity Commission ("EEOC") alleging that pursuant to a policy of the NYPD she had been discriminated against on the basis of gender in the terms and conditions of her employment. On July 5, 1989 the EEOC issued plaintiff a right to sue letter, and on September 28, 1989 the complaint in this action was filed.

The gravamen of the complaint is the claim that prior to October 1988 the NYPD had a policy which mandated that all pregnant officers be placed on restricted duty

---

**1.** In her original papers, plaintiff requested attorney's fees in the amount of $69,875. The figure $77,275 represents this amount plus fees subsequently claimed as attributable to the preparation of her reply papers to the instant application.

as soon as their pregnancy was known, and that this policy had the effect of denying plaintiff promotional opportunities equal to those afforded men. In particular, the complaint alleges that sometime in March 1988 plaintiff informed the NYPD that she was pregnant, that pursuant to the above-described policy she was immediately placed on restricted duty, and that as a direct consequence of being placed on restricted duty she was denied the opportunity to be promoted to the rank of sergeant, despite the fact that she was otherwise qualified for such a promotion.

The relief sought included monetary damages for wages denied plaintiff in connection with the failure to promote, and retroactive seniority status in the position of sergeant to the date she would have been eligible for that position absent the existence of defendants' allegedly discriminatory policy. In addition, the complaint sought relief in the form of orders: (1) declaring the above-described policy of the NYPD unconstitutional; (2) compelling defendants to accelerate the dates plaintiff could take examinations for the positions of lieutenant and captain, respectively; and (3) directing defendants to promote plaintiff to these positions upon successfully passing such examinations in the order or priority plaintiff would have achieved had defendants' allegedly unconstitutional actions not deprived her of the opportunity to take the examinations at an earlier date. With respect to plaintiff's promotion, if any, to lieutenant, the complaint sought an order directing defendants to reimburse her for salary and other benefits relating to this position, "in an amount to be determined when the effective date of plaintiff's promotion to lieutenant is ascertained". Compl., at 20, ¶ 4. It also included a claim for punitive damages in the amount of $1,000,000.

By the January 1992 settlement agreement, in addition to consenting to reimburse plaintiff for her reasonable costs and attorney's fees, defendants agreed to provide the following relief: (1) plaintiff will have her date of promotion to the position of sergeant adjusted for all purposes from September 20, 1988 to May 26, 1988, and she will receive $3,245 in back pay, plus interest, in connection with this adjustment; (2) in the event plaintiff takes and passes the next scheduled lieutenant's examination, she will be evaluated for promotion to that position in the order to which she would have been entitled had she been eligible to take Exam No. 5609 [the lieutenant's examination given at an earlier date]; (3) in the event plaintiff is appointed to the position of lieutenant, her date of appointment will be adjusted to the date she would have been appointed had she taken and passed Exam No. 5609, and this retroactive appointment will include seniority and all other benefits, but not back pay; (4) in the event plaintiff takes and passes the next scheduled captain's examination, plaintiff will be awarded similar relief with respect to appointment to that position. In addition, the settlement includes a provision to the effect that all references to plaintiff's initial ineligibility for the position of sergeant will be deleted from her permanent records. With respect to the complaint's claim for an order declaring the policy at issue in this suit unconstitutional, defendants inform that in October 1988 such policy was abandoned.

To date the judicial proceedings in this matter have been limited. Immediately following the first conference, we referred the action to Magistrate Judge Lee to oversee discovery. *See* December 19, 1989 Order Of Reference. On February 15, 1990 plaintiff served interrogatories and a request for documents. During the course of the next twelve months the parties attended seven conferences before Judge Lee. Plaintiff informs that the first six of these conferences were dedicated to settlement discussions[2]. During the sixth conference, on December 5, 1990, Judge Lee instructed defendants to respond to plaintiff's outstanding interrogatories. Thereafter plaintiff raised certain objections to defendants' responses, and on March 19, 1991 plaintiff moved for an order to compel defendants to answer certain questions that had been

**2.** Status Reports forwarded to us by Judge Lee confirm the accuracy of this statement.

propounded. By Memorandum Endorsement dated April 18, 1991 Judge Lee granted this motion "in all respects". *See* 4/18/91 Mem.End.

Pursuant to 28 U.S.C. § 636(b)(1)(A), defendants then filed objections to Judge Lee's April 18th Order, and on July 22 we heard oral argument on such objections [3]. With the consent of the parties, we adjourned consideration of the merits of this dispute pending additional settlement discussions. Thereafter we held two additional settlement conferences, one on August 1 and the second on November 11. As previously stated, on January 24, 1992 the parties filed the above-described stipulation of settlement.

At all times plaintiff has been represented by Joseph P. Baumgartner, Esq., a solo practitioner whose office is in Long Island and who has ten years of experience in civil rights litigation. In support of the instant fee application Baumgartner filed an affidavit asserting that his previous civil rights experience has been as a defendant's lawyer, and that it has been his practice to charge private clients an amount between $200 and $250 per hour for his services. He requests compensation in the amount of $250/hr. for the time spent in connection with this suit. With respect to the number of hours claimed, Baumgartner submits contemporaneous time records which include the date, a description of the task performed, and an estimate—to the nearest tenth of an hour—of the amount of time expended on each task performed in this litigation. Although these records reflect a total of 360.4 hours [4], Baumgartner asserts that pursuant to the exercise of billing discretion the instant fee application seeks reimbursement for only 309.1 hours [5].

In relevant part, the hours for which compensation is here claimed, can be broken down as follows [6]:

| Task | Total Hours Claimed |
|---|---|
| EEOC Complaint | 3 |
| Preparation of Complaint | 24 |
| Filing of Complaint | 3.1 |
| Review of Defendants Answer | 1.7 |
| Settlement Negotiations (including travel time) | 78.25 |
| Interrogatories: First Round | 74.3 |
| Discovery (including Additional Interrogatories) | 40.75 |
| Client Conferences | 14.2 |
| General Case Research | 10.6 |
| Fee Application | 50.5 |

In opposition, defendants contend that both the hourly rate suggested by Baum-

3. In the period between April and July, pursuant to Fed.R.Civ.P. 68, defendants filed an Offer of Judgment. Such Offer proposed settling the action on the following substantive terms: (1) plaintiff's date of promotion to the position of Sergeant would be adjusted from September 20, 1988 to May 26, 1988, and she would receive back pay in the amount of $3,245 plus interest and less applicable deductions in connection with this adjustment; and (2) in the event plaintiff were to take and pass the next scheduled lieutenant's examination, defendants would grant her two years of retroactive seniority in the position of lieutenant with all benefits, but no back pay. *See* Pl. Reply Mem., at Exh. F. Plaintiff rejected this offer.

4. The figure 360.4 represents 309.9 hours spent in connection with the main litigation, and 50.5 hours for work performed in connection with the instant fee application.

5. Baumgartner asserts that in the exercise of billing discretion, he made the following reductions: 25 hours from the time spent in connection with the preparation of the complaint; 30 hours from the time attributable to the first round of interrogatories, including the March 19, 1991 motion to compel defendants to respond to plaintiff's interrogatories; and 5 hours from the time attributable to the remaining discovery practice. *See* Baumgartner Affid. ¶ 26.

6. *See* Baumgartner Affid., at Exhs. C, D.; Pl. Reply Mem., at Exh. B.

gartner and the number of hours claimed are unreasonable. With respect to the former, defendants contend that Baumgartner's skill, experience, low-overhead, and the quality of his work warrant an hourly rate of $175/hr. In addition, defendants challenge the appropriateness of compensating counsel at the full hourly rate for: (1) 71 hours documented as "travel time"; (2) 10.6 hours expended reading basic civil rights cases; and (3) 3.1 hours spent performing the administrative task of filing the complaint. With respect to the number of hours claimed, defendants complain that the hours attributable to the preparation of the complaint and first round of interrogatories are excessive. In this regard, counsel for defendants, Asst. Corp. Counsel Randy M. Liss, disputes Baumgartner's statement that much of the time expended in conferences with Judge Lee is attributable to settlement discussions and not the first round of interrogatories. Defendants also contend that the 50.5 hours spent in connection with the instant fee application is unreasonable "in that the application was unnecessary", as defendants had previously offered plaintiff $25,000 to settle said claim. *See* Def.Mem. at 14–15.

At oral argument the parties provided us with the following additional information. Ms. Liss informed us that she did not attend the first six conferences before Judge Lee and that she had no information from the attorney who represented the defendants at that time as to what transpired at those conferences. Mr. Baumgartner stated that in traveling to the courthouse, it was his usual practice to drive from his office in Holbrook, New York to the borough of Queens, and to take the subway from Queens to Foley Square. This trip took him approximately two hours.

## DISCUSSION

Before addressing the question of what constitutes a reasonable fee in the circumstances before us, we note that there can be no doubt that plaintiff's counsel achieved excellent results. The settlement agreement executed in January 1992 effectively provides plaintiff with relief which mirrors that sought by the complaint and will serve to compensate plaintiff in a manner which perhaps exceeds the relief we could have provided had plaintiff prevailed at trial[7].

So stated, we turn first to a discussion of what is a reasonable hourly rate for the services of plaintiff's counsel, and then we address the reasonableness of the number of hours for which the fee application seeks compensation. *See Hensley v. Eckerhart* (1983) 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40.

### I. Hourly Rates

■ It is well settled that a reasonable hourly rate is one which is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation". *Blum v. Stenson* (1984) 465 U.S. 886, 895– 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891. Based on our review of Baumgartner's past experience as a civil rights lawyer, the fact that he is a solo practitioner, and our knowledge of the determinations by other courts as to what is presently the prevailing market rate for counsel of comparable skill, we find that compensation at the rate of $200/hr. is here reasonable. *See Chambless v. Masters, Mates & Pilots Pension Plan* (2d Cir.1989) 885 F.2d 1053, 1058–9 (noting that the size of an attorney's firm is relevant in determining the relevant community for "prevailing market rates"); *Rivera v. Dyett* (S.D.N.Y.1991) 762 F.Supp. 1109 (awarding partners in small Westchester County law firm $165 per hour); *see also Pastre v. Weber* (S.D.N.Y.1991, Knapp, J.) 1991 WL 378206, 1991 U.S.Dist. LEXIS 11550 (awarding 8th

---

**7.** Although defendants object to the statement that the commencement of this action caused the NYPD to change its policy regarding the duty classification of pregnant officers, it is undisputed that such policy was changed two months after plaintiff filed her complaint with the EEOC. Accordingly, we can not help but conclude that plaintiff's EEOC complaint, which effectively gave defendants notice of the instant suit, had at least some effect in changing the policy of which plaintiff complains.

year associate at Hughes Hubbard & Reed $205 per hour for work done in 1991).

■ Although we recognize that it would be within our power to compensate counsel at the full hourly rate for time spent in travel, *see Ruggiero v. Krzeminski* (2d Cir. 1991) 928 F.2d 558, 564–5; *Soler v. G & U, Inc.* (S.D.N.Y.1987) 658 F.Supp. 1093, 1100–1 n. 16, we find that such an award would be inappropriate in the circumstances before us. Baumgartner candidly informed us that during his travel to the court he spends the majority of his time driving, and the remainder as one, among hundreds of persons, commuting on New York's subways. Under such conditions, it is obvious that "[t]he time spent in transit may have been beneficial, but it probably was not as productive as time at the office or in court". *Society for Good Will to Retarded Children v. Cuomo* (E.D.N.Y.1983) 574 F.Supp. 994, 998, *order vacated on different grounds* (2d Cir.1984) 737 F.2d 1253, *order reinstated on remand,* 103 F.R.D. 169 (E.D.N.Y.1984). In order to award full pay for travel time, we would have to assume that Baumgartner never has a minute of uncompensated time when at the office. Without in any way reflecting on his diligence, we decline to make that assumption and conclude that compensation at half of the full hourly rate, or $100 per hour, is reasonable for the 71 hours of time Baumgartner spent traveling in connection with this action. *See id.; cf. Huntington Branch NAACP v. Town of Huntington* (E.D.N.Y.1990) 749 F.Supp. 62, 65 (noting that attorneys should not simply be awarded the highest rate they can earn, but only such rate as will provide them reasonable payment for their work).

■ In a similar vein, we find that the rate at which Baumgartner is to be compensated for the 10.6 hours he expended reviewing basic civil rights cases must be somewhat reduced. *See Cohen v. West Haven Board of Police Commissioners* (2d Cir.1980) 638 F.2d 496, 505 ("a different rate of compensation may well be set for different types of litigation tasks"). Although we have no dispute with the proposition that such research is often necessary and is properly billable to a fee-paying client, we are not persuaded that it is the general practice of experienced civil rights attorneys to either bill their clients at the full hourly rate for such research or otherwise refrain from exercising billing discretion in this area. *See Chambless,* 885 F.2d at 1059 (noting that the burden of demonstrating that the rate is in line with those prevailing in the relevant community "for similar services" is on the party seeking compensation). As our determination that Baumgartner's normal hourly rate should be $200 was based on the finding that he was a lawyer well versed in civil rights law, we find that a reduction of approximately 50 percent of the full hourly rate, or a rate of $100/hr., is appropriate for this time.

■ With respect to defendant's objection that Baumgartner should not be compensated for the 3.1 hours expended performing the ministerial task of filing the complaint, we agree. As the court in *Society for Good Will to Retarded Children* observed, "this time does not properly belong in the category of legal work for which a premium rate may be sought ... [and it] is normally subsumed within an attorney's overhead". 574 F.Supp. at 999. As plaintiff gives us no reason to conclude otherwise, we disallow compensation for these 3.1 hours entirely.

## II. Time Expended

Our review of the contemporaneous time records submitted by Baumgartner leads us to conclude that for the most part these records are sufficiently specific to permit us to evaluate the reasonableness of the allocation of time, and the entries which are vague are made clearer by examination of the entries preceding or following them. *See New York State Ass'n. for Retarded Children Inc. v. Carey* (2d Cir.1983) 711 F.2d 1136; *Meriwether v. Coughlin* (S.D.N.Y.1989) 727 F.Supp. 823, 827. We therefore turn to defendants' more specific attack that the time expended on certain phases of the litigation was more than may reasonably have been necessary.

With respect to the 24 hours allocated to the preparation of the complaint, having reviewed the complaint, which consists of twenty-one pages of text and sets forth a detailed account of the nature of plaintiff's claims, we are persuaded that the number of hours claimed is not unreasonable.[8] Although defendants correctly observe that Fed.R.Civ.P. 8 requires only a short and plain statement of a party's claim, it is beyond cavil that a more detailed statement of the substance of the plaintiff's case both assists the defendants in their understanding of the nature of the charges brought against them, and may avert the necessity of the parties having to spend additional time in discovery. Accordingly, we decline to adopt defendants' suggestion that Rule 8 should govern our determination of what constitutes compensable time in these circumstances.

As to defendant's argument that plaintiff has mischaracterized as time spent in settlement negotiations, time which is properly attributable to the first round of interrogatories, and that the time spent on the first round of interrogatories is grossly excessive, we find both contentions to be without merit. First, we are confident that Baumgartner's description of the content of the discussions which occurred during the first six conferences before Judge Lee is correct. Apart from the fact that our own records support the accuracy of this description, we note that defendants offer no evidence to contradict Baumgartner's statement and it is undisputed that defendants were not directed to answer plaintiff's February 1990 interrogatories until the seventh conference or December 1990. As to whether or not the total time spent on the first round of interrogatories was excessive, we first observe that Judge Lee's March 1991 memorandum endorsement makes clear that she found merit to "all aspects" of plaintiff's motion to compel defendants to respond to such interrogatories. As our review of the proceedings to date leads us to conclude that this finding was not "clearly erroneous", we are not persuaded that the 74.3 hours of time allocated to this phase of the litigation was unwarranted.

Finally, we note that we do not accept defendants argument that the instant fee application was "unnecessary"; however we do find that the number of hours claimed in connection with this application is unreasonably high. First, we observe that the instant fee application can not be considered "complex". Because this application was brought pursuant to the January 1992 settlement agreement, plaintiff was not required to carry the burden of demonstrating that it was a prevailing party, as is required in applications brought directly under 42 U.S.C. § 1988. *See* 42 U.S.C. § 1988; *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Second, plaintiff's initial application and its reply papers consisted of a total of 47 pages, plus 11 exhibits which were photocopies of such items as the complaint and Baumgartner's time records; and defendants' memorandum in opposition consisted of 21 pages of text plus two xeroxed exhibits. Our review of these papers leads us to conclude that they were not particularly difficult to draft or understand. Accordingly, we find that to permit compensation for 50.5 hours in the instant circumstances would be unreasonable. We therefore, in exercise of our discretion, reduce by 50% the number of hours allocated to the instant fee application.

### CONCLUSION

In light of the foregoing, we find that an award of attorney's fees in the amount of $46,240 and of costs in the amount of $603.75, as set forth in the appendix annexed to this opinion, is reasonable. Pursuant to the January 1992 settlement agreement, defendants shall make payment in the amount of $46,843.75 as soon as practicable. The Clerk is directed to mark this action as closed on our docket.

SO ORDERED.

---

8. The complaint is set forth in its entirety as Exhibit C to plaintiff's Reply Memorandum.

## APPENDIX

| Task | Hours Awarded | Hourly Rate | Fees |
|---|---|---|---|
| EEOC Complaint | 3 | | |
| Preparation of Complaint | 24 | | |
| Filing of Complaint | 0 | | |
| Review of Defs. Ans. | 1.7 | | |
| Settlement Negotiations | 78.25 | | |
| Interrogatories: First Round | 74.3 | | |
| Discovery | 40.74 | | |
| Client Conferences | 14.2 | | |
| Fee Application | 25.25 | | |
| | 261.40 | | |
| LESS Travel —— | (71.00) | | |
| | 190.40 | × $200 | = $38,080 |
| Travel | 71.00 | × $100 | = $ 7,100 |
| Basic Research | 10.60 | × $100 | = $ 1,060 |
| | | TOTAL AWARD | = $46,240 |